# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL NUNEZ,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>AURORA LOAN SERVICES,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 11cv1121 DMS (POR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

In this mortgage foreclosure action Defendant Aurora Loan Services LLC filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition and Defendant replied. For the reasons which follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

### Factual Allegations and Procedural Background

According to the complaint, on or about June 21, 2007 Plaintiff refinanced his primary residence located at 11877 Via Granero in El Cajon, California ("Property"). Although Plaintiff was promised a 4.75 percent interest rate with a monthly payment of $2,999, he was informed at the closing that his monthly payment could be reduced to $2,161. Left out of the discussion of good news was that the loan with the lower monthly payment had an adjustable interest rate of more than 8.5 percent and a negative amortization feature, that the lower monthly payment did not cover all of the principal due, and that making that payment would result in the principal balance increasing over time. Based on the terms of the loan, in three an a half years of monthly payments, the principal owing

1 would increase to 115 percent of the original loan amount and the monthly payment would
2 automatically reset to fully amortize the principal and interest, amounting to more than $5,200 per
3 month. To induce him to sign loan papers with the foregoing terms, Plaintiff was also presented with
4 a grossly inaccurate disclosure under the Truth in Lending Act ("TILA"), which, among other things,
5 understated the finance charge and total of loan payments by more than one million dollars each.
6 Shortly after the signing, Defendant acquired the loan and became its servicer. Plaintiff eventually
7 defaulted, Defendant acquired the Property at a nonjudicial foreclosure and currently holds title to it.

8 On May 23, 2011 Plaintiff filed a complaint in this Court against Defendant for TILA
9 disclosure violations pursuant to 15 U.S.C. Sections 1601 *et seq.*, violation of the California Business
10 and Professions Code Section 17200 *et seq.* ("Unfair Competition Law" or "UCL"), unconscionability
11 and for aiding and abetting fraud. The Court has subject matter jurisdiction over the TILA claim
12 pursuant to 28 U.S.C. Section 1331 and over the remaining state law claims pursuant to 28 U.S.C.
13 Section 1367. Defendant filed a motion to dismiss the complaint pursuant to Federal Rule of Civil
14 Procedure 12(b)(6).

**Discussion**

16 A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729,
17 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory.
18 *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation
19 marks and citation omitted); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6)
20 authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a
21 complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential
22 facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*,749 F.2d 530, 534 (9th Cir. 1984);
23 *see also Shroyer*, 622 F.3d at 1041.

24 In this regard, "to survive a motion to dismiss, a complaint must contain sufficient factual
25 matter to state a facially plausible claim to relief." *Shroyer*, 622 F.3d at 1041, citing *Ashcroft v. Iqbal*,
26 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff
27 pleads factual content that allows the court to draw the reasonable inference that the defendant is liable
28 for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949, citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

1  544, 556 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a
2  context-specific task that requires the reviewing court to draw on its judicial experience and common
3  sense."  *Iqbal*, 129 S. Ct. at 1950.

4  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all
5  factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill*
6  *v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions need not be taken
7  as true merely because they are couched as factual allegations.  *Twombly*, 550 U.S. at 555.  Similarly,
8  "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to
9  dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

## Tender of Amount Owed

11  Defendant initially maintains that this action should be dismissed because Plaintiff failed to
12  allege tender of the amount owed on his loan.  Plaintiff counters he is not seeking to rescind his
13  refinance loan and is therefore not required to allege tender. (Opp'n at 10-11, citing 15 U.S.C. §
14  1635(b).)

15  However, whether pursuant to his TILA claim or any of his state law claims, Plaintiff's
16  complaint seeks, among other things, to set aside the nonjudicial foreclosure. (Compl. at 28).  To the
17  extent Plaintiff requests such relief, he is required to allege tender.  "A valid and viable tender of
18  payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of
19  trust."  *Karlsen v. Am. Sav. & Loan Ass'n.*, 15 Cal. App. 3d 112, 117 (1971); *see also* Miller & Starr
20  Cal. Real Estate § 10:212 (3d ed. 2011).

21  Because Plaintiff has failed to do so, he cannot state a claim to set aside the foreclosure sale.
22  In this regard, Defendant's motion to dismiss is **GRANTED**.  Failure to allege tender, however, has
23  no effect on some of Plaintiff's other requests for relief, such as damages and attorneys' fees and costs.
24  To the extent Defendant's motion is granted, Plaintiff requests leave to amend.  Defendant
25  argues leave should be denied because in his opposition Plaintiff presented no additional facts he
26  could allege in the amended complaint.

27  / / / / /
28  / / / / /

1    Rule 15 advises the court that leave to amend shall be freely given when justice so requires.
2 Fed. R. Civ. P. 15(a).  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC*
3 *v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

7 *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Dismissal with prejudice and without leave to amend is
8 not appropriate unless it is clear that the complaint could not be saved by amendment.  *Id*.  Because
9 nothing in the record so far shows that Plaintiff is unable to allege sufficient facts to meet the tender
10 requirement, his request for **LEAVE TO AMEND IS GRANTED**.

### TILA Statute of Limitations

12    Defendant further argues that Plaintiff's claim for TILA disclosure violations should be
13 dismissed as time barred.  The statute of limitations for damage claims under TILA is "one year from
14 the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  "[T]he limitations period in Section
15 1640(e) runs from the date of consummation of the transaction . . . ." *King v. California*, 784 F.2d 910,
16 915 (9th Cir. 1986).  The loan transaction in this case closed on or about June 21, 2007 (Compl. at 12),
17 and the complaint was filed on May 23, 2011.

18    Plaintiff contends, however, that the statute should be equitably tolled.  "[T]he doctrine of
19 equitable tolling may, in the appropriate circumstances, suspend the limitations period until the
20 borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form
21 the basis of the TILA action." *King*, 784 F.2d at 915.  Plaintiff alleged in the complaint that he did
22 not discover the TILA violation until September 13, 2010, when he received discovery in a related
23 action. (Compl. at 22.)  Specifically, he alleged he received an inaccurate and misleading TILA
24 disclosure to sign at the closing to induce him to finalize the refinance transaction. (Compl. at 7-10.)
25 The TILA disclosure included in his copy of the loan documents, which were left with him for his
26 records, however, was materially different. (*Id*.; *see also* Exh. 8 & 9.)  Among other things, the
27 disclosure Plaintiff signed at closing understated by a million dollars each the finance charge and total
28 of loan payments for the refinance in violation of 15 U.S.C. Section 1638 and 12 C.F.R. Section

1  226.18. (*Id.* at 18-20; *see also id.* at 8; *cf.* Ex. 8 & 9.) Because a copy of this document was not left
2  with him for his records, he did not discover the inaccuracy until it was produced in his lawsuit against
3  the original lender on or about September 13, 2010. (*Id.* at 7, 10, 17, 22.)

4       Defendant claims equitable tolling does not apply in this case because Plaintiff should have
5  discovered earlier that the disclosure he signed was inaccurate. (Def.'s Mot. at 7-8.) First, Plaintiff
6  alleged that the Lender represented to him monthly payments after refinance would be $2,161.
7  (Compl. at 3-4.) According to Defendant, this is the monthly payment Plaintiff paid after refinance.
8  However, the TILA disclosure Plaintiff signed showed monthly payments at $4,072.92. (Compl. Ex.
9  8.) Defendant argues this should have prompted Plaintiff to question the accuracy of the disclosure.
10 This argument is unavailing because it ignores the fact that one of the documents Plaintiff would need
11 to compare, *i.e.*, the TILA disclosure he signed, was not available to him until September 13, 2010.
12 Because Plaintiff was making payments consistent with Lender's representation at closing and in the
13 TILA disclosure which was left with him (Compl. Ex. 9), one can reasonably infer that the inaccuracy
14 of the TILA disclosure he signed would not be apparent to a reasonable person before September 13,
15 2010.

16      In its reply brief, Defendant also maintains that Plaintiff should have discovered the
17 discrepancy sooner because the interest rate on the loan was 8.5 percent, while the rate on the TILA
18 disclosure Plaintiff signed was 4.75 percent. (Reply at 4.) This is not supported by Plaintiff's
19 allegations or exhibits. The TILA disclosures, the one Plaintiff signed and the copy left with him
20 after closing, show interest rates at 8.5 and 8.66 percent respectively. (Compl. Ex. 8 & 9.)
21 Furthermore, the note shows an 8.5 rate. (*Id.* Ex. 4.) Defendant's argument based on the disclosed
22 interest rates is therefore also rejected.

23      Because Plaintiff's allegations support a reasonable inference that he could not have
24 reasonably discovered his TILA disclosure claim sooner, Defendant's statute of limitation argument
25 is rejected. To the extent Defendant's motion to dismiss is based on statute of limitations under TILA,
26 it is **DENIED**.
27 / / / / /
28 / / / / /

**Assignee Liability Under TILA**

Defendant also contends that even if Plaintiff were able to state a damage claim for TILA disclosure violations against the original lender, he cannot do so against Defendant, who is merely the lender's assignee. In pertinent part, a TILA claim which can be maintained against a creditor can be maintained against the creditor's assignee "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a).

Plaintiff alleged the TILA disclosure violation appeared on the face of the loan documents Defendant had at its disposal when he acquired Plaintiff's loan. (Compl. at 15.) According to Plaintiff, Defendant could have discovered the violation by comparing the final HUD-1 statement, which showed the 8.66 percent rate, and the signed TILA disclosure, which showed the 8.5 percent rate. (*Id*. at 20 & Ex. 8.) Defendant does not dispute for purposes of this motion that the difference between the two rates exceeded the permissible variance for TILA disclosures. (*See* Compl. at 20, citing 12 C.F.R. § 226.22(a)(2).) It contends, however, that these allegations are insufficient to state a claim because the "final" TILA disclosure statement reflects the 8.66 percent rate. In this regard, Defendant relies on the unsigned TILA disclosure statement bearing the closing date. (Def.'s Mot. at 9, referring to Compl. Ex. 9.) Defendant does not contend, but appears to admit for purposes of this motion, that this was not the only TILA disclosure statement it received when it purchased Plaintiff's loan, but that it also received the disclosure signed by Plaintiff on the closing date (Compl. Ex. 8). Defendant argues it had no duty to investigate the discrepancy between these two different TILA disclosure statements.

The court disagrees. "[A] violation apparent on the face of the disclosure statement includes, but is not limited to . . . a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned . . . ." 15 U.S.C. § 1641(a). It is undisputed for purposes of the pending motion that Defendant received the final HUD-1 statement and two TILA disclosure statements. First, only one TILA disclosure statement was signed by Plaintiff at the closing, and its interest rate differed from the one listed in the final HUD-1 statement. The discrepancy, which admittedly exceeded the permissible variance under TILA, was apparent on the face of these two documents. Second, Defendant received two TILA disclosures with the closing date,

1 only one of which was signed by Plaintiff. The statements did not only differ in the interest rate listed, but the one which bore Plaintiff's signature showed the finance charge and total of loan payments at an amount approximately one million dollars less than the final TILA disclosure statement which was not signed. (*Cf.* Compl. Ex. 8 & 9.) On the face of these two documents, they could not both be right. Either one of the two comparisons shows that a TILA violation was apparent on the face of the loan documents.

Based on Plaintiff's allegations and exhibits, it can be reasonably inferred that the TILA violation was apparent on the face of the loan documents assigned when Defendant purchased Plaintiff's loan. To the extent Defendant's motion is based on the argument that it cannot be held liable under TILA as an assignee, its motion is **DENIED**.

### Unfair Competition Law

Next, Defendant argues Plaintiff cannot state a claim for unfair competition under the UCL. "Because Business and Professions Code section 17200 . . . establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent." *Cal-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). In this regard, Plaintiff alleged Defendant purchased Plaintiff's loan, which on its face was oppressive and predatory, and violated TILA disclosure requirements. (Compl. at 23-24; *see also id.* at 6.) He further alleged that purchasing and securitizing predatory loans such as Plaintiff's was Defendants's business practice. (*Id.*)

Defendant maintains that Plaintiff did not allege any unlawful act so as to support a UCL claim. "An unlawful business practice under section 17200 is an act or practice, committed pursuant to a business activity, that is at the same time *forbidden by law*." *Progressive W. Ins. Co. v. Yolo County Super. Ct. (Preciado)*, 135 Cal. App. 4th 263, 287 (2006) (emphasis in original). Defendant's argument is rejected because, as discussed above, Plaintiff successfully alleged a claim against Defendant for violation of TILA disclosure requirements.

Defendant also claims that Plaintiff did not sufficiently allege the UCL claim under the unfairness option, because he failed to allege an ongoing wrongful business practice. However, as is evident from the allegations in the complaint, Plaintiff alleged that purchasing and securitizing
/ / / / /

1 predatory loans was Defendant's business practice. (Compl. at 23-24). To the extent Defendant's motion seeks dismissal of the UCL claim, it is **DENIED**.

## Unconscionability

Defendant contends that Plaintiff's unconscionability claim should be dismissed because it is a defense to enforcement of contract, not an affirmative cause of action, and Defendant is not attempting to enforce the loan contract in this action. Although Defendant is correct in that "[u]nconscionability operates as a defense to enforcement of a contract," *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 213 (1994), this does not preclude Plaintiff's cause of action, *see id.*

Defendant next argues the claim fails because Plaintiff did not allege any facts to suggest Defendant took any actions to frustrate the purpose of the Deed of Trust. This is inapposite. Plaintiff's unconscionability claim is based on California Civil Code Section 1670.5 and Financial Code Section 22302. Civil Code Section 1670.5(a) provides as follows:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Financial Code Section 22302 applies this provision to loan contracts. Neither section requires a plaintiff to allege or prove frustration of purpose, as suggested by Defendant. Furthermore, Plaintiff complained the terms of the Note were unconscionable, not the Deed of Trust. (Compl. at 24-25.)

Finally, Defendant's last argument that it did not originate the loan and therefore could not be held liable, is rejected. Plaintiff alleged Defendant purchased the loan and that the unconscionable terms were apparent on the face of the loan documents. (*Id.*) Defendant does not address its assignee liability in this context. To the extent it attacks the unconscionability claim, Defendant's motion is **DENIED**.

## Aiding and Abetting Fraud

Finally, Defendant argues that Plaintiff did not sufficiently allege knowledge in support of his claim that Defendant aided and abetted the original lender and mortgage broker in a fraudulent scheme to place consumers in predatory loans without proper disclosure of the predatory terms. (Compl. at 25-28.) Under California law, liability for aiding and abetting a tort

may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Casey v. U.S. Nat'l Bank Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) (internal quotation marks, ellipsis and citation omitted).  The knowledge element requires "actual knowledge of the specific primary wrong the defendant substantially assisted," *Id*. at 1145.

Plaintiff alleged, among other things, that the primary wrong was the fraud perpetrated on him by the lender and mortgage broker when they presented him with a grossly misleading TILA disclosure at closing to induce him to sign the loan papers for a predatory loan. (Compl. at 26.)  He further alleged that Defendant "had actual knowledge of the fraud," including the fraud pertaining to the TILA disclosure at closing. (*Id*. at 27.)  Defendant's argument for dismissal of the aiding and abetting claim is therefore rejected. To the extent Defendant seeks dismissal of the aiding and abetting claim, its motion is **DENIED**.

## Conclusion

Based on the foregoing, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  It is hereby **ORDERED** as follows:

1. Defendant's motion is **GRANTED** to the extent that the complaint does not state a claim to set aside the foreclosure sale.  In all other respects, the motion is **DENIED**.

2. Plaintiff is **GRANTED LEAVE TO AMEND**.  If Plaintiff chooses to file an amended complaint, he must do so no later than **November 13, 2011**.

3. Defendant shall respond to the amended complaint, if any, within the time set forth in Federal Rule of Civil Procedure 15(a)(3).  If Plaintiff chooses not to file an amended complaint, Defendant shall respond within the same period of time calculated from November 13, 2011.

**IT IS SO ORDERED.**

DATED: October 24, 2011

_____
HON. DANA M. SABRAW
United States District Judge